IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| DENNIS WINDSOR, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| V. | § | No. 3:16-cv-934-L |
| | § | |
| JEFF OLSON AND NERIUM | § | |
| INTERNATIONAL, L.L.C., | § | |
| | § | |
| Defendant/Counter-Plaintiffs. | § | |

**MEMORANDUM OPINION AND ORDER AS TO
DEFENDANT'S EMERGENCY MOTION TO COMPEL AND
<u>NONPARTY MARK SMITH'S OBJECTION TO SUBPOENA</u>[1]**

Defendant Nerium International, L.L.C. ("Nerium") filed an Emergency Motion to Compel, *see* Dkt. No. 76 (the "MTC"), which United States District Judge Sam A. Lindsay has referred to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b), *see* Dkt. No. 79.

Nerium seeks an order compelling Plaintiff Dennis Windsor to produce all documents responsive to Nerium International LLC's Request for Production No. 61 ("all documents reflecting communications or documents exchanged between Plaintiff (or Plaintiff's counsel) and Mark Smith or Tammy Smith (or their counsel) from

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

-1-

January 1, 2016 through the present relating to Nerium, Jeff Olson, or Plaintiff's claims asserted in this case."). *See* Dkt. No. 76-1.

Windsor filed a response, *see* Dkt. No. 82, and Nerium filed a reply, *see* Dkt. No. 88.

On December 30, 2018, Nonparty Mark Smith also filed his Objection to Subpoena, *see* Dkt. No. 81 (the "Objection"), which Judge Lindsay also referred to the undersigned for a hearing, if necessary, and determination under 28 U.S.C. § 636(b), *see* Dkt. No. 83. Mark Smith objects under Federal Rule of Civil Procedure 45(d)(2)(B) to a Federal Rule of Civil Procedure 45 subpoena that Nerium served on him in this case to require him to produce documents to a location in Los Angeles, California on December 31, 2018. *See* Dkt. No 81 at 1-2; *see also* Dkt. No. 91 at 16-22 of 23 (the "Subpoena"). And Nerium has filed its Response to Nonparty Mark Smith's Objections to Subpoena. *See* Dkt. No. 90.

**Background and Legal Standards**

The parties are familiar with the background of the disputed matters that Nerium raises in the MTC, the essence of which Nerium summarizes as follows:

> Mark and Tammy Smith are Nerium's former top distributors. In March 2018, the Smiths left Nerium and likewise joined Jeunesse as independent distributors. Nerium knows Windsor and Mark Smith communicated about Windsor's claims before his departure. Doc. #47. Nerium also has reason to believe Windsor communicated directly with the Smiths before and after their departure from Nerium about matters relating to their counterclaims. Mark Smith is scheduled to be deposed on January 3, 2019 in California. *See* Appx. 7.
> On November 20, 2018, Nerium served a request for production seeking certain documents and communications exchanged between

Windsor and the Smiths, and Windsor served objections on December 20, 2018:

> REQUEST NO. 61:
> All documents reflecting communications or documents exchanged between You (or Your counsel) and Mark Smith or Tammy Smith (or their counsel) from January 1, 2016 through the present relating to Nerium, Jeff Olson, or Your claims asserted in this case.
> OBJECTION:
> Plaintiff objects to this request because it calls for documents protected by the attorney-client, attorney-work product and Common Interest Doctrine privileges.
> Appx. 5.

Dkt. No. 76 at 2.

And Mark Smith explains the background of his Objection to Subpoena:

> 1. In this lawsuit, Plaintiff Dennis Windsor ("Windsor") sued Nerium International, LLC ("Nerium") and Jeff Olson ("Olson") asserting breach of contract and fraud arising out of a broken promise to give Windsor an equity interest in Nerium. In addition, Windsor asserts a copyright infringement claim arising out of Nerium's use of copyrighted materials owned by Windsor. This lawsuit was filed in March 2016. Windsor's employment was terminated and he joined a competitor, Jeunesse, in April 2016.
> 2. Nerium filed a counterclaim asserting breach of fiduciary duty, misappropriation of trade secrets and conversion.
> 3. Smith, who also used to work for Nerium, now works for Jeunesse, and is in two contentious lawsuits with Nerium and Olson. The first lawsuit was filed by Smith in California, *Mark Smith and Tammy Smith v. Nerium International, LLC, et. al,* Case No. 8:18-cv-01088-JVSPLA (C.D. Cal. filed February 23, 2018 (the "California Lawsuit"). In the California lawsuit, Smith asserts twenty-eight (28) causes of action arising, generally, out of broken promises by Olson and Nerium to pay Smith compensation which he did not receive, including an equity interest in Nerium. Smith also asserts that after he went to work for Jeunesse, Olson and Nerium defamed Smith in an effort to undermine his business. In the California lawsuit, Olson and Nerium are contesting personal jurisdiction. Currently, discovery in the California Lawsuit is limited to matters related to the personal jurisdiction issue.
> 4. The second lawsuit between Smith and Nerium *Nerium International, LLC v. Mark Smith, et. al.*, Cause No. DC-18-03726, 134th Judicial District Court, Dallas County, Texas, filed Mar. 20, 2018) (the

"Texas Lawsuit"), is pending in Texas, and, over Smith's objection, is now in arbitration Nerium filed the Texas Lawsuit claiming that Smith and others violated a non-solicitation provision when they left Nerium to work for Jeunesse. In the Texas Lawsuit, Smith produced emails, text messages, Facebook posts and other documents, was deposed for a full day (including about his decision to leave Nerium for Jeunesse), and was examined at a nearly full-day hearing in the matter. Nerium obtained a TRO and temporary injunction which is now on appeal to the Dallas Court of Appeals. Nerium then moved to compel the matter to arbitration where it is currently pending, *Nerium International, LLC, JO Products, LLC, and Jeff Olson v. Mark Smith, et. al.*, American Arbitration Association No. 01-18-0002-8613. Discovery in the Texas Lawsuit, including the arbitration, is stayed.

     5.     Against this backdrop, on December 17, 2018 Nerium served Smith with a subpoena in this case to produce documents on December 31, 2018.

Dkt. 81 at 1-3. Nerium, in turn, explains its view of the relevant background as to the Subpoena and Mark Smith's objections:

> Dennis Windsor is Nerium's former president. Doc. #21 at ¶ 77. According to Windsor, around 2009, Nerium's owner and Chief Executive Officer Jeff Olson orally promised him ownership in the company. Doc. #19 at ¶¶ 8-9. Based on that supposed oral agreement, Windsor seeks damages of approximately $21 million from Olson and Nerium. *Id.* at ¶ 24. Defendants deny there is any such agreement. See Doc. #21. Nerium terminated Windsor's employment in March 2016, shortly after he filed suit. *Id.* at ¶ 127. Just a week after he was terminated, it was announced that Windsor had become the Chief Development Officer of a competing company called Jeunesse. *Id.* at ¶ 82. Nerium asserts counterclaims against Windsor arising from his conduct before and after his departure. *See* Doc. 23 ¶¶ 120-86.
> 
> Mark Smith is Nerium's former top distributor. In March 2018, Smith left Nerium and likewise joined Jeunesse as an independent distributor. Smith, Olson, and Nerium are parties in a separate lawsuit, originally filed in state court, and now pending before the American Arbitration Association ("Smith Arbitration"). Windsor is not a party to the Smith Arbitration. Although there is some limited factual overlap in the two cases, the claims and defenses asserted are different.
> ....
> Despite initial denials by Windsor (including denials under oath to this Court), Nerium now knows Windsor and Mark Smith communicated

about Windsor's claims before his departure and colluded with each other before and after Smith's departure from Nerium. The recordings the Court recently ordered Windsor to produce, which Nerium has just begun reviewing, indicate that Smith and Windsor lined up their stories before suit was filed in 2016, and that Smith encouraged Windsor to file suit. Smith then passed along to Windsor what he claimed to be the content of Smith's privileged conversations with Nerium's Chief Legal Officer about Windsor's lawsuit and promised to funnel him information as he obtained it.

Other recently produced documents filed with the Court by Windsor's counsel show other examples of collusion. For example, on March 21, 2016, Windsor and Smith communicated directly about Smith's negotiations with Olson, as Smith said "I am going to pull back from [Nerium] HQ fully." Doc. #82-2 at p. 99. Windsor responded: "A contract can be completed in 72 hours max with Steve's team. This is a shame and a loss for many!!!! [Olson] is 100% responsible!! Sadly he has done even worse to me. I will always hold my head up high for my sacrifices to get us to this point. Y'all should do the same!!!! I count y'all as treasured friends now after going to battle with you since 2011. God ultimately owns the future NOT [Olson]!!!" *Id.* When Smith eventually left Nerium in 2018, and was sued for violating his non-solicitation covenant, Windsor emailed Smith: "As a fellow Co owner & Co founder [sic] of NI, sorry to hear Olson has filed what I'm sure is a frivolous lawsuit against your family. Please forward to me so I can be appraised of his continued fraudulent actions." *Id.* at p. 85. Smith responded "Will do." Id. By this point, Smith and Windsor were already working together at Jeunesse; the email appears to be something Windsor thought would sanitize their communications. In July 2018, after learning Nerium had resolved a separate lawsuit, Windsor texted Smith "Let's go get OUR $" in reference to Olson. *Id.* at p. 25.

....

Shortly after learning that Smith had voluntarily agreed to sit for a trial deposition (at Windsor's request) in California on January 3, 2019, Nerium issued a document subpoena to Smith. Appx. 3-9. The subpoena requested production of only four categories of documents by December 31, 2018, to allow at least a brief period for counsel to review before the deposition. Appx. 3 & 8. Nerium's counsel emailed the subpoena to Smith's lead counsel in California on December 10, 2018 and asked that he accept service. Appx. 2. After follow-up requests from Nerium's counsel, Smith's counsel eventually responded on December 12 "Mark [Smith] is not authorizing me to accept service of the subpoena." Appx. 10.

> Because Smith refused to allow his counsel to accept service, on December 13, Nerium revised the subpoena to reflect personal service on Smith. Appx. 15-18. That same day, Nerium's counsel emailed a courtesy copy of the updated subpoena to Smith's counsel, and noted the content and document requests were the same as the December 10 version. Appx. 13. Nerium's process server formally served Smith with the subpoena in person that same day. Affidavit of Service, Doc. #89; see also Appx. 23. Smith filed objections to the subpoena on December 30. Doc. #82.

Dkt. 90 at 1-3 (footnote omitted).

The objecting party seeking to withhold responsive documents or materials "has the burden of proof in demonstrating that the discovery at issue is privileged or that the work-product doctrine applies." *Boze Memorial, Inc v. The Travelers Lloyds Ins. Co.*, No. 3:12-cv-669-P, 2013 WL 12123898, at *3 (N.D. Tex. Aug. 16, 2013) (citing cases).

And the Court has previously laid out standards that govern a Federal Rule of Civil Procedure 37(a) motion to compel such as Nerium's MTC, and those standards are incorporated, but will not be repeated, here, including as to the general standards governing attorney work product. *See Zenith Ins. Co. v. Texas Institute for Surgery, L.L.P.*, ___ F.R.D. ___, No. 3:18-cv-182-D, 2018 WL 4386268, at *6-*7 (N.D. Tex. Sept. 14, 2018); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573-86 (N.D. Tex. 2018).

But, as to waiver of work product protection, as Nerium asserts, the Court has previously explained that

> [t]he work-product doctrine is very different from the attorney-client privilege with regard to possible waiver. Although the attorney-client privilege exists to protect the confidential communications between an attorney and client and, thus, is generally waived by disclosure of confidential communications to third parties, the work-product protection exists to "promote the adversary system by safeguarding the fruits of an

attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). "Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id.* That is, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000). But such a "disclosure does waive protection if it has substantially increased the opportunities for potential adversaries to obtain the information." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (internal quotation marks omitted). And, for example, "the work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered." *Shields*, 864 F.2d at 382.

"Unlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver." [*S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006)]; *accord Ecuadorian Plaintiffs*, 619 F.3d at 379 & n.10 (party asserting work-product protection is not required to prove non-waiver). "If the party is successful, waiver of work product immunity will be limited to the materials actually disclosed." *Brady*, 238 F.R.D. at 444.

"What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *United States v. Nobles*, 422 U.S. 225, 239 n.14, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975).

*Mir v. L-3 Comm'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 467 (N.D. Tex. 2016).

And, as to what law governs Windsor's assertion of attorney-client privilege, including as extended by the common interest doctrine, the Court adopts – in this case in which Nerium has raised both Texas state law and federal counterclaims, as to which this evidence appears to possibly be relevant – its reasoning from a prior decision in another case:

Before addressing the applicability of which documents are protected by the attorney-client privilege, the undersigned must consider whether federal or state law of attorney-client privilege applies. In a diversity action raising only state law claims, the Court must apply the state law of attorney-client privilege. *See* FED. R. EVID. 501. In a case

-7-

raising only federal claims over which the Court has federal-question jurisdiction, federal common law controls any privilege issues. *See id.*; *Willy v. Admin. Rw. Bd.*, 423 F.3d 483, 495 (5th Cir. 2005). .... Other Texas federal courts have persuasively reasoned that federal privilege law applies where a plaintiff raises both federal and state claims and the evidence at issue is relevant to both. *See Guzman v. Memorial Hermann Hosp. Sys.*, Civ. A. No. H-07-3973, at *4-*7 (S.D. Tex. Feb. 20, 2009) (discussing cases). Under the circumstances here, and for the reasons aptly explained by Judge Rosenthal in *Guzman*, the Court concludes that the federal common law of privilege applies in this case.

Representations involving multiple clients with separate counsel call for the application of what have been called the joint-defense or common-interest doctrine. The joint-defense or common-interest doctrine extends certain privileges, typically the attorney-client privilege and work product protection, to documents that are prepared by parties sharing a common litigation interest that would otherwise not enjoy such privilege. *See FTC v. Think All Publishing, L.L.C.*, No. 4:07-cv-011, 2008 WL 687456, at *1 (E.D. Tex. Mar.11, 2008) (citing *Ferko v. NASCAR*, 219 F.R.D. 396, 401 (E.D. Tex. 2003)). "Thus, while the attorney-client and work product privileges are typically waived upon disclosure to a third party, where that third party 'share[s] a common legal interest' with the producing entity, such production does not waive either privilege." *Id.* (quoting *Ferko*, 219 F.R.D. at 401).

The joint-defense or common-interest doctrine applies under federal common law in the Fifth Circuit to "(1) communications between co-defendants in actual litigation and their counsel and (2) communications between potential co-defendants and their counsel." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)] (internal citations omitted). The joint-defense or common-interest doctrine "extends the attorney-client privilege to communications prompted by threatened or actual civil or criminal proceedings and intended to facilitate representation between potential co-defendants with a common legal interest and their counsel." *Autobytel, Inc. v. Dealix Corp.*, 455 F. Supp. 2d 569, 576 (E.D. Tex. 2006) (citing *Santa Fe*, 272 F.3d at 710-11). The doctrine "exists to protect communications between two parties or attorneys that share a common legal interest," and, "[f]or example, courts have found that co-defendants, an insurer and an insured, and a patentee and a licensee share a common legal interest." *Ferko v. NASCAR*, 219 F.R.D. 403, 406 (E.D. Tex. 2003). But the "doctrine is to be narrowly construed because, although policy considerations support its use in some circumstances, it is 'an obstacle to truth seeking.'" *Think All Publishing*, 2008 WL 687456, at *1. For communications between potential co-parties to be covered by the doctrine, "there must be a palpable threat of

litigation at the time of the communication, rather than a mere awareness that one's questionable conduct might some day result in litigation, before communications between one possible future co-defendant and another ... could qualify for protection." *Santa Fe*, 272 F.3d at 711.

*Nieman v. Hale*, No. 3:12-cv-2433-L-BN, 2013 WL 6814789, at *2 (N.D. Tex. Dec. 26, 2013); *accord In re E.E.O.C.*, 207 F. App'x 426, 431 (5th Cir. 2006) ("With respect to the attorney-client privilege, we note that because this case concerns the adjudication of federal rights, the federal common law of attorney-client privilege applies.").

As to the requirements for establishing the privilege in the first instance, the United States Court of Appeals for the Fifth Circuit has explained:

> The attorney-client privilege is recognized as "the oldest of the privileges ... known to the common law." *United States v. Zolin*, 491 U.S. 554, 562, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989) (internal quotation marks omitted). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* (internal quotation marks omitted); *see also In re Grand Jury Subpoena*, 419 F.3d 329, 338 (5th Cir. 2005). Simply stated, under this rule, "an attorney may not disclose his client's confidences."

*In re E.E.O.C.*, 207 F. App'x at 431 (citation omitted).

"For a communication to be protected under the [attorney-client] privilege, the proponent 'must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)).

But, even if Texas law applied to Windsor's asserted attorney-client privilege, as Nerium asserts as to the governing standards (but not as to the privilege's extension by the common interest doctrine), the governing standards would be largely the same:

> This Court sitting in this diversity case applies the Texas attorney-client privilege. Under Texas law, the elements of the attorney-client privilege are: (1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived. The burden is on the party asserting the privilege to demonstrate how each document satisfies these elements. A general allegation of privilege is insufficient to meet this burden. Instead, the proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. Although a privilege log and an in camera review of documents may assist the court in conducting its analysis, a party asserting the privilege still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." In fact, "resort to in camera review is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible."

*Curlee v. United Parcel Serv., Inc. (Ohio)*, No. 3:13-cv-344-P, 2014 WL 4262036, at *4 (N.D. Tex. Aug. 29, 2014) (citations omitted).

[Texas Rule of Evidence 503(b)] extends the attorney-client privilege to communications between the client's lawyer and the client's representative. Under Rule 503(b), "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client: (A) between the client or the client's representative and the client's lawyer or the lawyer's representative; (B) between the client's lawyer and the lawyer's representative; (C) by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action; (D) between the client's representatives or between the client and the client's representative; or (E) among lawyers and their representatives representing the same

client." TEX. R. EVID. 503(b)(1). "A communication is 'confidential' if not intended to be disclosed to third persons other than those: (A) to whom disclosure is made to further the rendition of professional legal services to the client; or (B) reasonably necessary to transmit the communication." TEX. R. EVID. 503(a)(5).

"The privilege may be claimed by: (1) the client; (2) the client's guardian or conservator; (3) a deceased client's personal representative; or (4) the successor, trustee, or similar representative of a corporation, association, or other organization or entity – whether or not in existence. The person who was the client's lawyer or the lawyer's representative when the communication was made may claim the privilege on the client's behalf—and is presumed to have authority to do so." TEX. R. EVID. 503(c).

Texas Rule of Evidence 503(a)(2) defines a "client's representative" as "(A) a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or (B) any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2). And Texas Rule of Evidence 503(a)(4) defines a "lawyer's representative" as "(A) one employed by the lawyer to assist in the rendition of professional legal services; or (B) an accountant who is reasonably necessary for the lawyer's rendition of professional legal services." TEX. R. EVID. 503(a)(4).

"Although the attorney-client privilege extends to communications between 'representatives of the client,' a party invoking the privilege must show that each person privy to the communication: (1) had the authority to obtain professional legal services on behalf of the client; (2) had authority to act on legal advice rendered to the client; or (3) made or received the confidential communication while acting within the scope of his employment for the purpose of effectuating legal representation to the client." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 475 (N.D. Tex. 2004).

*Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 595-96 (N.D. Tex. 2017).

"Although it is sometimes referred to as the 'joint defense' privilege, see *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 50-51 (Tex. 2012), Tex. R. Evid. 503(b)(1)(C) does not create an independent privilege, but rather an exception to the general rule that no attorney-client privilege attaches to communications that are made in the presence of or disclosed to a third party." In *In re XL Specialty Insurance Co.*, 373 S.W.3d 46 (Tex. 2012), the Texas Supreme Court made clear that Texas law on the so-called common-interest or joint-defense doctrine "requires that the

> communications be made in the context of a pending action," provides that "no commonality of interest exists absent actual litigation," and, accordingly, provides that the exception to the general rule under Texas law "is not a 'common interest' privilege that extends beyond litigation" and is not "a 'joint defense' privilege, as it applies not just to defendants but to any parties to a pending action." 373 S.W.3d at 51-52 (footnotes omitted). Rather, "Rule 503(b)(1)(C)'s privilege is more appropriately termed an 'allied litigant' privilege," "protects communications made between a client, or the client's lawyer, to another party's lawyer, not to the other party itself," and "applies only when the parties have separate counsel." *Id.* at 52-53.

*McKinney/Pearl Restaurant Ptrs., L.P. v. Metro. Life Ins. Co.*, No. 3:14-cv-2498-B, 2016 WL 2997744, at *5 (N.D. Tex. May 25, 2016) (citation omitted).

And, in any event, federal common law (as laid out above) would govern the common interest doctrine's application to any work product protection. *See generally Zenith Ins.*, 2018 WL 4386268, at *6 ("[T]he issue of whether documents are exempt from discovery under the attorney work product doctrine is governed by federal law in diversity cases because work product is not a substantive privilege within the meaning of Federal Rule of Civil Procedure 501." (internal quotation marks omitted)). And Windsor bears the burden of demonstrating any common interest or allied litigant doctrine's applicability to any withheld communications or documents. *See Santa Fe*, 272 F.3d at 710; *In re XL Specialty*, 373 S.W.3d at 52-54.

Finally, the Court has previously laid out standards that govern a nonparty's Federal Rule of Civil Procedure 45(d)(2)(B) objections to a Rule 45 subpoena to produce documents, and those standards are incorporated, but will not be repeated, here. *MetroPCS v. Thomas*, 327 F.R.D. 600, 606-10 (N.D. Tex. 2018); *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 42-45 (N.D. Tex. 2015).

## Analysis

I. <u>**Nerium's MTC**</u>

In response to the MTC, Windsor explains that Nerium

> acknowledged on page 3 of its motion that what they seek in their emergency motion, are the same audio recordings which were the subject of a previous Motion to Compel. *See* Doc. #47. The court has since ruled on Nerium's previous motion to compel, and consistent with that order, plaintiff is in the process of producing the audio recordings. As such, the portion Nerium's motion seeking to compel those recording is moot.
> 2. Nerium's emergency motion also claims waiver and requests production of all communications between plaintiff, Mark Smith, and their respective counsel, despite the existence of a Common Interest Agreement between Plaintiff and Mark Smith and their respective counsel. At the time of Nerium's filing of its emergency motion, counsel for Nerium was aware that plaintiff had already agreed to produce all of the responsive communications between Plaintiff, Smith and Counsel that transpired before the execution of the Common Interest Agreement. Indeed, within 2 hours of Nerium filing its motion, plaintiff produced those very documents. To date, the only documents that are being withheld are some 17 emails between counsel for plaintiff and counsel for Mark Smith – made after the entry of the Common Interest Agreement.

Dkt. No. 82 at 1-2 (footnotes and emphasis omitted).

The issue, then, is now only whether those 17 communications – as listed on Windsor's privilege log, *see* Dkt. No. 82-1 – should be shielded from discovery in this case based on Windsor's asserting, as to each, attorney-client privilege and attorney work product protection, as extended by the common interest doctrine.

Nerium replies that,

> [i]n response to Nerium's motion to compel (Doc. #76), Dennis Windsor bore the burden of proving each withheld document is privileged. *Celanese Corp. v. Clariant Corp.*, No. 3:14-CV-4165-M, 2015 WL 9269415, at *1 (N.D. Tex. Dec. 21, 2015) (Horan, J.) (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)). "A general allegation of privilege is insufficient to meet this burden." *Id.* Instead, Windsor was

-13-

> required to "provide sufficient facts by way of detailed affidavits or other evidence to enable the Court to determine whether the privilege exists or work-product protection applies as to a specific document or communication." *Id.*
>
> Windsor submitted no declarations or affidavits. *See* Doc. #82. Nor did Windsor even mention (much less validate) his assertions of attorney-client privilege or work-product. *See id.* Instead, Windsor generally asserted the existence of a "Common Interest Agreement" and claimed "a good faith basis for asserting the common interest privilege" without specifics or evidence, and attached an unverified privilege log and his recent document production. *Id.* at ¶¶ 2-3 & p. 4-329. This general, unsubstantiated privilege assertion is insufficient to sustain Windsor's burden. *See, e.g., Celanese Corp.*, 2015 WL 9269415, at *1 (noting a "general allegation of privilege is insufficient" and explaining the evidence required); *see also Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 601 (N.D. Tex. 2017) (Horan, J.) (denying motion for protective order because privilege proponent had not carried its burden).
>
> Similarly unpersuasive is Windsor's passing reference to the common-interest doctrine. *See* Doc. #82 at ¶ 3. The doctrine is not an independent privilege; it merely "extends the attorney-client privilege" and work-product doctrine under certain narrow circumstances. *See Nieman v. Hale*, No. 3:12-CV-2433-L-BN, 2013 WL 6814789, at *2 (N.D. Tex. Dec. 26, 2013) (Horan, J.); *see also Flashmark Techs. LLC v. GTECH Corp.*, No. 206-cv-205, 2007 WL 2264765, at *2 n.3 (E.D. Tex. Aug. 6, 2007). Because Windsor failed to prove or argue with any specificity that the documents are attorney-client privileged or work product, the common-interest doctrine would not provide a standalone basis to withhold documents. *See id.*

Dkt. 88 at 1-2.

The Court agrees with Nerium's assessment for the reasons and based on the authority that it lays out. Nerium filed the MTC on December 21, 2018, and, according to the information that Windsor includes on his privilege log, all of the withheld communications date back to no later than December 11, 2018. Although the Court ordered expedited briefing on the MTC in light of Mark Smith's January 3, 2019 trial deposition, Windsor should have had sufficient time to produce the evidence required

to meet his burden. Windsor's general assertions on his privilege log and attaching a copy of a Common Interest Agreement are not sufficient to meet his burden to establish each of the requirements to show that each withheld communication is privileged or protected work product.

Having failed to meet that burden, the common interest doctrine – under federal common law or Texas law – does not independently protect the communications from disclosure in discovery in this case, and the Court need not reach the issue of whether Nerium met its burden to show waiver of any work product protection.

But, even if Windsor had made the required showing as to each of the 17 withheld communications to establish attorney-client privilege or work product protection or both, Windsor has not established that the privilege or work product protection would be extended to communications with a non-party's counsel under the common interest doctrine.

Mark and Tammy Smith are not parties in this case, and Nerium asserts that the common interest doctrine does not extend the attorney-client privilege to communications between (1) Windsor or his counsel and (2) Mark or Tammy Smith or their counsel because the Smiths are not Windsor's actual or potential co-defendants. *See* Dkt. No. 76 at 5-6; *accord Santa Fe*, 272 F.3d at 710. As Windsor points out, the Fifth Circuit has more recently explained in an unpublished opinion that

> this court has not expressly held that the privilege is inapplicable to co-plaintiffs. Several courts – including lower courts in this circuit – have held that the privilege extends to co-plaintiffs in litigation.
> But we need not reach this issue. Even if we were to conclude that the common legal interest privilege extends to some communications

>between Morgan Stanley and Safeguard's counsel, the privilege does not apply to the remaining communication at issue. Communications may be protected by the common legal interest privilege only if those communications "'further a joint or common interest.'" *In re Santa Fe Int'l Corp.*, 272 F.3d at 711-12 (quoting *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 (E.D. Tex. 1993)) (emphasis added).... We have reviewed the parties' summaries of the remaining communication, and we conclude that it was not made in furtherance of (but rather is diametrically opposed to) the prosecution of the Insurance Litigation. As such, the common legal interest privilege does not apply to this communication.

*BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 F. App'x 690, 703-04 (5th Cir. 2015) (citations, emphasis, and footnotes omitted). But the Fifth Circuit also noted that, "[e]ven if the common legal interest privilege extends to plaintiffs, we also question whether the privilege could apply to any of the communications between Morgan Stanley and Safeguard, which were not 'co-plaintiffs' in the Insurance Litigation (Safeguard was the sole plaintiff)" and that, "[a]lthough Morgan Stanley had some interest in the litigation due to its interest in Safeguard (via PPF), such an interest may be insufficient to give rise to the privilege." *Id.* at 704 n.20.

The Court need not reach this unsettled issued. Even assuming that the federal common law common interest doctrine extends to communications between counsel for these plaintiffs in separate actions, Windsor has not met his burden to show or explain how each communication was made to further a joint or common interest that he shared with Mark or Tammy Smith. Windsor's pointing out "the existence of a Common Interest Agreement between Plaintiff and Mark Smith and their respective counsel" and contending that "plaintiff has a good faith basis for asserting the common interest privilege" does not meet his burden. Dkt. No. 82 at 1-2. And the Court would

-16-

reach the same determination even if the Texas allied litigant doctrine applies as to attorney-client privilege here and could properly extended to communications between counsel for these plaintiffs in separate actions. *See In re XL Specialty*, 373 S.W.3d at 53 ("Here, XL is the client, and the communications were between XL's lawyer and a third party, Cintas, who was not represented by XL's lawyer (or any other lawyer) and was not a party to the litigation or any other related pending action."); *see generally id.* at 51-54; *but see Benson v. Rosenthal*, Civ. A. No. 15-782 2016 WL 3001129, at *4 (E.D. La. May 25, 2016) ("Texas case law indicates that this narrow Texas common interest rule protects only persons who are co-litigants, either co-plaintiffs or co-defendants, in the same pending action, not in separate cases.").

But, under Federal Rule of Civil Procedure 37(a)(5)(A), the Court determines that, considering all of the circumstances here and the Court's rulings above as to the discovery requests at issue, the parties will bear their own expenses, including attorneys' fees, in connection with Nerium's MTC.

## II. <u>Mark Smith's Objection to Subpoena</u>

After Mark Smith filed his Objection to Subpoena and Judge Lindsay referred it to the undersigned, the Court entered an electronic order that, "if Defendants want a ruling on these objections before the January 3, 2019, Mark Smith deposition, any response to the objections must be filed by 10:00 a.m. Central Time on 1/2/2019 – after which the Court will rule on the objections." Dkt. No. 86. Nerium did so, filing what is effectively a Federal Rule of Civil Procedure 45(d)(2)(B)(i) motion for an order compelling production. *See* Dkt. No. 90. Rule 45(d)(2)(B)(i) provides that, "[i]f an

objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." FED. R. CIV. P. 45(d)(2)(B)(i).

Unfortunately, the Court, now having reviewed the Subpoena, recognizes that the United States District Court for the Northern District of Texas is not the court for the district where compliance with the Subpoena is required. Rather, as this Court has previously explained at greater length, "for purposes of a Rule 45(d)(2) or 45(d)(3) motion, the court or district 'where compliance is required' is determined by the location or 'place' for compliance identified on the subpoena as required by [Federal Rule of Civil Procedure] 45(a)(1)(A)(iii)." *CSS, Inc. v. Herrington*, No. 3:17-mc-71-N-BN, 2017 WL 4750707, at *5 (N.D. Tex. Oct. 20, 2017).

Because the Northern District of Texas is not the district where compliance with the Subpoena is required, this Court has no basis or authority to address the Subpoena or Mark Smith's objections under Rule 45(d)(2)(B), as to which any Rule 45(d)(2)(B)(i) motion must be filed in the court for the district where compliance is required.

**Conclusion**

For the reasons and to the extent explained above, the Court GRANTS Defendant Nerium International, L.L.C.'s Emergency Motion to Compel [Dkt. No. 76] and can take no further action on Nonparty Mark Smith's Objections to Subpoena [Dkt. No. 81]. The Court ORDERS Plaintiff Dennis Windsor to, by **5:00 p.m. Central**

**Time on January 2, 2019**, produce to Nerium's counsel all unproduced documents responsive to Nerium International LLC's Request for Production No. 61.

SO ORDERED.

DATED: January 2, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE